UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------

LADDAVALAYA LIMWONGSE,

               Plaintiff,               **MEMORANDUM OF DECISION AND ORDER**

   -v.-                                      03-CV-5273 (DRH) (JO)

NEW YORK STATE OFFICE OF
MENTAL HEALTH, PILGRIM PSYCHIATRIC
CENTER,

               Defendants.
------------------------------------------------

**Appearances:**

**For the Plaintiff:**
**Laddavalaya Limwongse, Pro Se**
26 Sandy Hill Road
Commack, NY 11725

**For the Defendants:**
**Eliot Spitzer, Attorney General for the State of New York**
300 Motor Parkway - Suite 205
Hauppauge, New York 11788
By: Anne C. Leahey

**HURLEY, District Judge:**

      Plaintiff Laddavalaya Limwongse ("Plaintiff") initiated the instant action pursuant to the Americans with Disabilities Act (the "ADA") against defendants New York State Office of Mental Health ("OMH") and Pilgrim Psychiatric Center ("Pilgrim") (collectively, "Defendants") claiming that they wrongfully discriminated against her in the workplace. Defendants have moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendants' motion is granted in part and denied in part.

## BACKGROUND

      Plaintiff filed this action on October 20, 2003, alleging a claim for employment

discrimination under the ADA. By Memorandum of Decision and Order dated July 7, 2004, the Court granted Defendants' motion to dismiss the Complaint. The Court held that Defendants were immune from liability for monetary damages under Title I of the ADA and that Plaintiff's claims for injunctive relief failed to state a cause of action as the Complaint was devoid of any allegation of a disability. The Court granted Plaintiff thirty days to file an Amended Complaint.

On August 9, 2004, Plaintiff filed an Amended Complaint.[1] Plaintiff alleges that she was employed by Pilgrim as a pharmacist since 1995. (Am. Compl. ¶¶ 10-11.) Her duties included the preparation and dispensing of medication to patients in certain locations within Pilgrim. (*Id.* ¶ 11.) Plaintiff alleges that beginning about December 2000, Jay H. Jacobstein ("Jacobstein"), Plaintiff's immediate supervisor, and Dennis J. Stallone ("Stallone"), Jacobstein's immediate supervisor, began to make comments indicating that they believed Plaintiff's mental state was affecting her ability to perform her duties. (*Id.* ¶¶ 12-13, 17.) As a result, Jacobstein and Stallone allegedly began monitoring Plaintiff's work more closely than the work of other pharmacists and unreasonably criticized her work performance. (*Id.* ¶ 18.) Plaintiff further claims that Jacobstein and Stallone created a hostile work environment based on their belief that Plaintiff was mentally disabled and made several attempts to terminate her. (*Id.* ¶¶ 19-21.)

On March 19, 2002, and pursuant to New York Civil Service Law § 72, Pilgrim suspended Plaintiff from her employment "with the intent to terminate" her on the ground that she was mentally unfit to perform the duties of her position. (*Id.* ¶ 22.) Plaintiff alleges that

---

[1] Although Plaintiff's filing was not timely pursuant to the Court's July 7, 2004 Order, given Plaintiff's pro se status, the Court declines to dismiss on this basis and instead proceeds to an analysis of the merits of Plaintiff's claims.

Jacobstein and Stallone requested the suspension and termination, (*id.* ¶ 24), and that it was based on "medical and psychiatric reports on the plaintiff's mental condition obtained by [Pilgrim which concluded that] plaintiff [had] a personality disorder which rendered her unable to work in any position." (*Id.* ¶ 25.) Plaintiff claims that in order to get paid during her suspension, she was required to use her accumulated leave. (*Id.* ¶¶ 26-27.)

On or about August 8, 2002, a New York State Hearing Officer found that Pilgrim had failed to meet its burden under section 72 of the New York Civil Service Law[2] and ordered Plaintiff reinstated to her position on a probationary basis. (*Id.* ¶ 28.) Pilgrim failed to restore Plaintiff's accumulated leave, however, "because of the plaintiff's perceived mental disability." (*Id.* ¶ 30.) "On the basis of the harassment that the plaintiff experienced before March 19, 2002, the attempt of the defendant to terminate the plaintiff under § 72, and other information the plaintiff obtained, the plaintiff came to believe that, if she returned to work at Pilgrim . . ., she would have been subjected to even more severe harassment, and to eventual termination." (*Id.* ¶ 31.) As a result, Plaintiff retired under circumstances allegedly rising to the level of a constructive discharge. (*Id.* ¶¶ 32-33.)

Plaintiff alleges that although Pilgrim "regards her as having a mental disability," (*id.* ¶ 35), she "in fact has no mental disability." (*Id.* ¶ 34) Later, however, she claims that "[t]he plaintiff, pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq[.], was and is disabled." (*Id.* ¶ 38.)

Plaintiff brings four causes of action: (1) harassment pursuant to the ADA based

---

[2] Under section 72, Pilgrim was required to establish that Plaintiff was "not physically or mentally fit to perform the duties of . . . her position." N.Y. Civil Serv. Law § 72(1).

-3-

upon Defendants' conduct in creating a hostile work environment because of Plaintiff's perceived disability; (2) unlawful discrimination pursuant to the ADA based upon Defendants' conduct in suspending Plaintiff and seeking to have her terminated because of her perceived disability; (3) unlawful discrimination pursuant to the ADA based upon Defendants' conduct in requiring Plaintiff to use her accumulated leave during her suspension and later failing to restore it; and (4) unlawful discrimination pursuant to the ADA based upon Defendants' conduct in constructively discharging Plaintiff because of her perceived disability.  (*Id.* ¶¶ 44-51.)  In the Wherefore clause, Plaintiff seeks a declaration that Defendants have violated the ADA as well as reinstatement with back-pay, including the restoration of her accumulated leave.  Defendants have moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) claiming that Plaintiff has failed to state a cause of action under the ADA.  Against this backdrop, the Court turns to the standards governing a Rule 12(b)(6) motion.

## DISCUSSION

### *I.    Applicable Legal Standard*

The court may not dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief.  *King v. Simpson*, 189 F.3d 284, 286 (2d Cir. 1999); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996).  The Court must accept all factual allegations in the proposed complaint as true and draw all reasonable inferences in favor of the plaintiff.  *King*, 189 F.3d at 287; *Jaghory v. New York State Dep't. of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997).  The Court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which

judicial notice may be taken." *Leonard F. v. Israel Disc. Bank*, 199 F.3d 99, 107 (2d Cir. 1999); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999). Finally, when the plaintiff proceeds pro se, as in this case, the Court is obliged to construe her pleadings liberally. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

## II.     Plaintiff has Sufficiently Alleged a Claim under the ADA

"A plaintiff asserting a violation of the ADA must prove that: (1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability." *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005). Here, Defendants argue that Plaintiff has not sufficiently pled the last three elements of an ADA claim. The Court disagrees.

As an initial matter, with regard to whether Plaintiff has adequately pled a disability within the meaning of the statute, the ADA defines "disability" as

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Here, Plaintiff attempts to meet the third definition of disability by alleging that Defendants regarded her as having a mental disability or a personality disorder. "A 'regarded as' claim turns on the employer's perception of the employee and is therefore a question of intent, not whether the employee has a disability." *Capobianco*, 422 F.3d at 57 (citations and internal quotation marks omitted). "It is not enough that the employer perceive the employee as somehow disabled; the employer must regard the employee as disabled within the

meaning of the ADA, i.e., having an impairment that substantially limits a major life activity." *Id.* (citations and internal quotation marks omitted).

Here, the Amended Complaint alleges that Defendants regarded Plaintiff as mentally unfit to work in any position and due to this perception, they had her suspended pending a hearing to determine whether she was in fact mentally disabled. The Amended Complaint further alleges that Defendants' ultimate intent was to terminate Plaintiff's employment based upon this perceived disability. Construing the Complaint liberally and drawing all inferences in Plaintiff's favor, the Court finds that Plaintiff has sufficiently alleged that Defendants regarded her as having a mental impairment within the ADA.

Next, as to Plaintiff's qualifications, Defendants argue that the Court should accord substantial weight to two prior administrative decisions which allegedly found that Defendants had probable cause to believe that Plaintiff represented a potential danger and thus was not qualified to carry our her duties as a pharmacist. Specifically, Defendants refer to the decision by an independent hearing officer pursuant to New York Civil Service Law § 72, which is referred to in the Amended Complaint, as well as a decision by the New York State Division of Human Rights ("NYSDHR").

As to the former decision, the hearing officer found that Pilgrim had not established that Plaintiff was mentally unfit to perform her job and that she should be reinstated immediately on a probationary basis for one year. Despite this finding, the hearing officer also found that Plaintiff's suspension was proper as Pilgrim had probable cause to believe that "the continued presence of [Plaintiff] represent[ed] a potential danger to persons or property or would severely interfere with operations." N.Y. Civil Serv. Law § 72(5). As to the latter decision, the

NYSDHR similarly found that Defendants had probable cause to conclude that Plaintiff "represented a potential danger to persons or property." (Defs.' Mem. Ex. B at 2.)

Although these decisions represent some evidence that Plaintiff was not qualified to do her job, at this preliminary stage in the litigation, the Court cannot state as a matter of law that Plaintiff has failed to *plead* that she was qualified for her job. After all, the issue presently before the Court is not one of sufficiency of proof but rather one of sufficiency of pleading. Accordingly, the Court finds that Plaintiff has met her pleading burden with regard to her qualifications. (*See* Am. Compl. ¶¶ 15-16 (alleging that Plaintiff "was and is qualified to perform the duties" of her job).)

Finally, Defendants argue that Plaintiff has failed to allege that she suffered an adverse employment action. Although Plaintiff alleges that she retired from her job, she claims that she was forced to do so because of Defendants' harassment. Defendants counter that Plaintiff has failed to plead a pattern of behavior which made her working conditions so intolerable so as to state a cause of action for constructive discharge. All of the cases cited by Defendants in support of their argument that Plaintiff's allegations are insufficient, however, were decided on summary judgment and are thus not germane at this stage in the proceedings. Accordingly, Plaintiff's allegations that she was constructively discharged are adequately pled.

In sum, the Court finds that Plaintiff has sufficiently pled a violation of the ADA.

### III. *Plaintiff Has Standing to Sue for Injunctive Relief*

Defendants assert that Plaintiff lacks standing to sue for injunctive relief because an independent hearing officer has already ordered Defendants to reinstate Plaintiff to her former position. Thus, Defendants argue, "[h]aving waived the option of reinstatement as a

probationary employee and chosen to retire, Plaintiff cannot assert a continuing violation and has no standing for the remedy of reinstatement." (Defs.' Mem. at 16.) Although Defendants' argument has some visceral appeal, the Court ultimately finds it misguided.

As noted above, the Court has already ruled in its prior decision that to the extent Plaintiff seeks *monetary* damages against Defendants, her claims must be dismissed as state agencies are immune from liability for money damages under Title I of the ADA. *See* July 7, 2004 Memorandum of Decision and Order (citing *Board of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356 (2001) and *Henrietta D. v. Bloomberg*, 331 F.3d 261, 288 (2d Cir. 2003)). In *Garrett*, the Supreme Court found that although "Congress did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages under Title I," private individuals could still sue states "for injunctive relief under *Ex parte Young*." *Garrett*, 531 U.S. at 374, n.9. This exception allows a federal court to issue an injunction against a state official who is acting in violation of federal law. *Ex parte Young*, 209 U.S. 123 (1908). "Whether a litigant's claim falls under the *Ex parte Young* exception to the Eleventh Amendment's bar against suing a state is a 'straightforward inquiry' that asks 'whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as *prospective*.'" *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372 (2d Cir. 2005) (emphasis added) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

In the instant case, although an independent hearing officer has already ordered Plaintiff reinstated pursuant to section 72 of the New York Civil Service Law, that hearing did not purport to determine whether Defendants had violated Plaintiff's rights under federal law, specifically, the ADA. Thus, if Plaintiff can prove that she was constructively discharged due to

intolerable work conditions in violation of the ADA, she will have established a need for injunctive relief beyond that of which the hearing officer decided, i.e., an ongoing violation of federal law. *See, e.g.*, *Henrietta*, 331 F.3d at 287 ("The Eleventh Amendment, however, does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law."). Accordingly, contrary to Defendants' contentions, Plaintiff's reinstatement and subsequent retirement does not moot her claim for injunctive relief based upon a violation of federal law so long as Plaintiff can show that she was constructively discharged due to Defendants' unlawful conduct, thereby rendering her retirement involuntary. *Compare Taylor v. FDIC*, 132 F.3d 753, 768 (D.C. Cir. 1997) (ruling that summary judgment finding that plaintiffs' resignations were voluntary and not the result of a constructive discharge mooted plaintiffs' request for a permanent injunction against future retaliation "by eliminating the possibility of future harm and the utility of the injunction"); *Veitch v. England*, No. Civ. A. 00-2982, 2005 WL 762099, at *16 (D.D.C. Apr. 4, 2005) (finding that plaintiff had no standing to seek reinstatement where plaintiff had not sufficiently established at summary judgment stage that he resigned because of defendant's illegal actions).

To the extent Plaintiff seeks back-pay, however, or the restoration of accumulated leave, the relief requested is clearly monetary in nature and thus foreclosed under *Garrett*, 531 U.S. at 374. Plaintiff's claims for back-pay and the restoration of accumulated leave are therefore dismissed.

Finally, Plaintiff seeks a declaration that Defendants have violated the ADA. Where a plaintiff alleges an ongoing violation of federal law, prospective relief may take the form of declaratory as well as injunctive relief. *See Williston v. Eggleston*, 379 F. Supp. 2d 561,

578 (S.D.N.Y. 2005). Thus, a declaration of past wrongs may be appropriate so long as such relief does not seek to impose a monetary loss upon the state for past conduct. *Id.* at 578-79; *see also Verizon*, 535 U.S. at 646 (finding that where request for declaratory relief did not place past liability of state at issue, "[i]nsofar as the exposure of the State is concerned, the prayer for declaratory relief adds nothing to the prayer for injunction"); *In re Dairy Mart*, 411 F.3d at 376 ("While [plaintiff's declaratory judgment claim] asks the Court to declare the state officials' past and future actions illegal, that relief does not impose a past liability on the state."). Accordingly, the Court declines to dismiss Plaintiff's request for declaratory relief.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART.** Plaintiff's claims for back-pay, including restoration of accumulated leave, are dismissed. Plaintiff's remaining claims are sustained.

**SO ORDERED.**

Dated: Central Islip, N.Y.
      October 26, 2005     /s_____
                                                Denis R. Hurley,
                                                United States District Judge